# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

| | | |
|---|---|---|
| E. JOHN HOSCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION FILE** |
| | ) | **NO.: _____** |
| WACHOVIA BANK, N.A., | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| XCHANGEAGENT, INC., FEDOR | ) | |
| "STAN" SALINAS, GLADSTONE | ) | |
| WILLIAMS, MICHAEL PROZER and | ) | |
| S. AVERY SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW E. JOHN HOSCH (hereinafter the "plaintiff") who, as Plaintiff in the above-captioned civil action, files this civil action against Defendants Wachovia Bank, N.A. (hereinafter "Wachovia"), Wells Fargo Bank, N.A. (hereinafter "Wells Fargo"), XchangeAGENT, Inc. (hereinafter "XA"), Fedor "Stan" Salinas (hereinafter "Salinas"), Gladstone Williams (hereinafter "Williams"), Michael Prozer (hereinafter "Prozer") and S. Avery Smith

{00031365.DOCX}

(hereinafter "Smith")[1] asserting the following facts and mixed statements of law and facts in support of his complaint:

## I.
## <u>JURY TRIAL DEMANDED</u>

### 1.

The plaintiff demands that a jury be impaneled in this matter to hear any and all genuine issues of material fact.

### 2.

This is a private civil action to recover damages from the defendants caused by their conspiracy to secure millions of dollars through a pattern of criminal predicate acts including mail, wire and bank fraud.

### 3.

The plaintiff brings this action pursuant to the federal RICO statute, 18 U.S.C. § 1964, the Georgia RICO Act, O.C.G.A. § 16-14-3 and pursuant to Georgia law to recover for the crippling economic injury the plaintiff suffered as a

---

[1]   Throughout this complaint, when the terms "defendants" and "co-conspirators" are used, this collectively refers to all defendants named herein, but is only intended to refer to Wells Fargo for any liability it has as a result of the conduct of another defendant.

{00031365.DOCX}

direct and proximate result of the fraudulent acts, omissions and RICO violations committed by the defendants.

**4.**

The plaintiff seeks treble monetary damages plus the costs of this suit, including all reasonable attorneys' fees, against the defendants pursuant to the federal and Georgia RICO statutes.

**5.**

The plaintiff seeks punitive damages against the defendants pursuant to O.C.G.A. § 51-12-5.1 to punish and penalize the defendants for their fraud, malice, willful misconduct, oppression and the entire want of care they demonstrated towards the plaintiff and his rights and to deter the defendants from engaging in such conduct in the future.

**6.**

As shown further herein, the defendants intentionally and actively conspired to defraud the plaintiff and cause him economic harm, and they committed other torts, offenses and violations as defined by the state and federal RICO statutes and as described below and at all times material to the allegations of the complaint, the defendants each acted with the "specific intent" of causing unchecked economic

3

harm to the plaintiff as defined at O.C.G.A. § 51-12-5.1(f).   Therefore, and pursuant to O.C.G.A. § 51-12-5.1(f), the plaintiff is entitled to an award of punitive damages "with no limitation regarding the amount" as determined upon the trial of this matter in the enlightened conscience of the jury.

## 7.

The plaintiff reserves the right to amend the Complaint to add any other appropriate claims if additional information becomes known to him through discovery in this action or through other investigative efforts.

## II.
## PARTIES AND SERVICE

### A.   Plaintiff:

## 8.

The plaintiff is a Georgia resident.  He resides within this judicial district on Jim Knight Road in Cartersville, Bartow County, Georgia.

### B.   Corporate Defendants:

## 9.

(a)   At all times material hereto, Wachovia was a North Carolina corporation and it was an "enterprise" as defined by O.C.G.A. § 16-14-3.   Its

4

principal place of business is located at 301 South College Street, Charlotte, North Carolina, but it conducts business throughout the United States, including at multiple locations within this judicial district.   Wachovia is a citizen of North Carolina pursuant to 28 U.S.C. § 1332(c)(1).  The plaintiff has notified Wachovia via first class mail or other reliable means that the within action has been commenced and requested it to waive service pursuant to Rule 4(d)(1) of the Federal Rules of Civil Procedure, but in the event Wachovia refuses or fails to waive service, then it may be served through its registered agent for service in Georgia, Corporation Services Company, 40 Technology Parkway South, # 300, Norcross, Gwinnett County, Georgia 30092.

(b)    On January 1, 2009, Wells Fargo and Wachovia announced the completion of a merger, the details of which are not presently known to the plaintiff, however, to the extent that Wachovia or Wells Fargo contend that Wells Fargo, not Wachovia, is the real party-in-interest in this action pursuant to the terms of such merger or if they contend that Wells Fargo, not Wachovia, will answer for any legal obligation arising out of the conduct of Wachovia that occurred prior to this acquisition and merger as described herein pursuant to the terms of such merger, then Wells Fargo is being named herein as a defendant and

the plaintiff has notified Wells Fargo via first class mail or other reliable means that the within action has been commenced and requested it to waive service pursuant to Rule 4(d)(1) of the Federal Rules of Civil Procedure, but in the event Wells Fargo refuses or fails to waive service, then it may be served through its registered agent for service in Georgia, which is the same registered agent for service in Georgia used by Wachovia, Corporation Services Company, 40 Technology Parkway South, # 300, Norcross, Gwinnett County, Georgia 30092.

(c)     If Wachovia and Wells Fargo stipulate that either Wachovia or Wells Fargo is the proper party in this action and that in the event of a judgment against such entity, they will both be liable to the plaintiff to satisfy such judgment, then the plaintiff will agree to a stipulation dropping the other entity based on such stipulation and in the interest of justice and judicial economy.

**10.**

XA is a Florida corporation and at all times material hereto, it was an "enterprise" as defined by O.C.G.A. § 16-14-3.  XA is a Florida corporation.  Its principal place of business and registered office are located at 1753 Ripley Run, Wellington, Florida.  XA has conducted business internationally and throughout the United States and in Georgia and it is a citizen of Florida pursuant to 28 U.S.C.

6

§ 1332(c)(1).  The plaintiff has notified XA via first class mail or other reliable means that the within action has been commenced and requested it to waive service pursuant to Rule 4(d)(1) of the Federal Rules of Civil Procedure, but in the event XA refuses or fails to waive service, then it may be served through an officer, a managing or general agent or any other agent authorized by appointment or by law to receive service of process at its principal place of business.

**C.**     **Individual Defendants:**

**11.**

Salinas is a resident of Maryland and the plaintiff has notified him via first class mail or other reliable means that the within action has been commenced and requested him to waive service pursuant to Rule 4(d)(1) of the Federal Rules of Civil Procedure, but in the event he refuses or fails to waive service, then he may be served in any of the ways described in Rule 4(e) of the Federal Rules of Civil Procedure.

**12.**

Prozer is a resident of Florida and the plaintiff has notified him via first class mail or other reliable means that the within action has been commenced and requested him to waive service pursuant to Rule 4(d)(1) of the Federal Rules of

7

Civil Procedure, but in the event he refuses or fails to waive service, then he may be served in any of the ways described in Rule 4(e) of the Federal Rules of Civil Procedure.

## 13.

Williams is a resident of Maryland and the plaintiff has notified Williams via first class mail or other reliable means that the within action has been commenced and requested that Williams waive service pursuant to Rule 4(d)(1) of the Federal Rules of Civil Procedure, but in the event Williams refuses or fails to waive service, then Williams may be served in any of the ways described in Rule 4(e) of the Federal Rules of Civil Procedure.

## 14.

Smith is a resident of Florida and the plaintiff has notified her via first class mail or other reliable means that the within action has been commenced and requested her to waive service pursuant to Rule 4(d)(1) of the Federal Rules of Civil Procedure, but in the event she refuses or fails to waive service, then she may be served in any of the ways described in Rule 4(e) of the Federal Rules of Civil Procedure.

{00031365.DOCX}

### III.
### <u>JURISDICTION AND VENUE</u>

### 15.

The Court has original jurisdiction over this action predicated upon 18 U.S.C. § 1964, 28 U.S.C. § 1331, 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1332(c)(1). There is complete diversity of citizenship between the plaintiff and the defendants. The amount in controversy exceeds $75,000, exclusive of interest and costs. The Court has jurisdiction over the within pendent state law claims, to wit: Georgia RICO, fraud and civil conspiracy, pursuant to 28 U.S.C. § 1367(a) and <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715 (1966) because those claims are so related to the claims arising under the laws of the United States that they form part of the same case or controversy.

### 16.

Venue is proper in this Court pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. §§ 1391(b)(2) and (3). Venue is also proper as to Wachovia, XA and Wells Fargo pursuant to 28 U.S.C. § 1391(c), in that, among other things, they are doing business in this judicial district and also because a substantial part of the events giving rise to this action occurred in this judicial district and because some of the defendants reside, are found or transacted their affairs in this judicial district and

{00031365.DOCX}

the ends of justice require that the other defendants be brought before this Court. Plaintiff invokes the expanded service of process provisions of 18 U.S.C. § 1965(b) as contemplated by 28 U.S.C. § 1391(a).

## IV.
## GENERAL ALLEGATIONS

### 17.

As described below with specificity and particularity, the defendants conspired to commit and carried out a fraudulent scheme devised to deprive the plaintiff of his property that, in fact, did deprive the plaintiff of his property and directly and proximately caused him serious tangible and intangible economic injury.

### 18.

The within fraudulent scheme was devised by the defendants sometime prior to July 22, 2008. It was thereafter carried out against, concealed from and not discoverable by the plaintiff until sometime after January of 2009.

### 19.

On or about July 22, 2008, Wachovia produced a written document which, in unequivocal written terms, misrepresented to the plaintiff and others that it was holding $21,236,923.42 belonging to XA on deposit in an account with Wachovia

10

{00031365.DOCX}

(hereinafter referred to as the "*$21 million deposit*") and that the *$21 million deposit* would be held by Wachovia for a period not to exceed ninety (90) days based on a Wachovia bank policy related to the size of this particular deposit and that upon the release of this hold, Wachovia would unconditionally release these funds. A true and accurate copy of the document conveying these misrepresentations in writing is attached hereto as Exhibit 1, incorporated herein by reference, and hereinafter referred to as the "Wachovia Letter." The contents and substance of the Wachovia Letter were also conveyed to the plaintiff verbally in person and over the telephone and cell phones by Prozer, Williams and Salinas.

## 20.

The Wachovia Letter was signed and it and its contents were verbally and visually disseminated by Salinas, who, at all times material thereto, was acting within the course and scope of his employment with Wachovia, engaged in the pursuit of the business of Wachovia and, was acting with actual or, alternatively, apparent authority of Wachovia.

## 21.

On or about August 18, 2008, Wachovia produced and provided the plaintiff and others with a "Custom Business Checking" account statement for the subject

{00031365.DOCX}

XA account (hereinafter the "Wachovia Statement") through which it represented to the plaintiff and others that on August 13, 2008 and August 14, 2008 it had withdrawn most of the monies in the *$21 million deposit* and used it to purchase $21 million worth of U.S. Treasury Bills.   A true and accurate copy of the Wachovia Statement is attached hereto as Exhibit 2 and it is incorporated herein by reference.   The contents and substance of the Wachovia Statement were also conveyed to the plaintiff verbally in person and over the telephone, cell phones by Prozer, Williams and Salinas.   The purpose of such representations was to deceive the plaintiff and others into believing that the *$21 million deposit* was real, so that they could secure a loan for their own benefit in the name of XA in an amount up to $18 million.   Then, when The Park Avenue Bank (hereinafter "PAB") decided to make a loan to XA based on these representations, which they ultimately did make in the amount of $2,999,995 (hereinafter the "*$3 million loan*"), the defendants' plan of deception grew with the added misrepresentation that the *$21 million deposit* was being converted into securities that could be pledged to secure the loan being considered by PAB, which in turn was further inducement for the plaintiff to agree to a guaranty when he was later asked by PAB.

12

**22.**

At all times material hereto, Salinas and Williams produced the Wachovia Statement and made the representations contained therein and as set forth in ¶ 21 of the complaint while acting within the scope and course of their employment with Wachovia, while engaged in the pursuit of the business of Wachovia and, with the actual or, alternatively, the apparent authority of Wachovia.

**23.**

On or about September 4, 2008, Wachovia executed an "Account Control Agreement" (hereinafter the "Account Control Agreement"), a true and accurate copy of which it produced to the plaintiff and others and through which it represented and "warranted" to the plaintiff and others that it had taken the Treasury Bills which it had purchased for XA with monies it previously held for XA on account in the *$21 million deposit* and that it had created one or more accounts in the name of XA at Wachovia wherein it was holding these Treasury Bills, subject to an "administrative hold," which would expire on October 28, 2008 and, that by the terms of the Account Control Agreement, PAB obtained control of these accounts and a security interest was created in these Treasury Bills in favor of PAB and in the event XA defaulted on the $3 million loan PAB made to XA,

{00031365.DOCX}

PAB had the exclusive right to unilaterally withdraw up to $21 million from these accounts, and no one else would be allowed to withdraw funds from the accounts without the joint written permission of PAB and XA.   Wachovia further represented in writing in the Account Control Agreement that it would reinvest any maturing Treasury Bills in the account, as they matured, into new Treasury Bills having similar maturities.  The contents and substance of the Account Control Agreement were also conveyed to the plaintiff verbally in person and over the telephone and cell phones by Prozer, Williams and Salinas.  A true and accurate copy of the Account Control Agreement is attached hereto as Exhibit 3 and incorporated herein by reference.

### 24.

The Account Control Agreement was executed by Salinas and Williams, on behalf of Wachovia, and at all times material hereto, they did so with full knowledge of its contents and while acting within the scope and course of their employment with Wachovia, while engaged in the pursuit of the business of Wachovia and, with the actual or, alternatively, the apparent authority of Wachovia. The Account Control Agreement was also executed by Prozer, who did so with full knowledge of its contents and while acting within the scope and course

14

{00031365.DOCX}

of his employment with XA, while engaged in the pursuit of the business of XA and, with the actual or, alternatively, the apparent authority of XA.

**25.**

Between July 22, 2008 and September 4, 2008, Prozer made multiple material representations to the plaintiff and others that XA had over $21 million on account at Wachovia in the *$21 million deposit* against which he wanted to borrow money on behalf of XA.

**26.**

At all times material hereto, Prozer made the representations set forth in ¶ 25 of the complaint while acting within the scope and course of his employment with XA, while engaged in the pursuit of the business of XA and, with the actual or, alternatively, the apparent authority of XA.

**27.**

Between July 22, 2008 and September 4, 2008, the defendants intentionally made the representations set forth in ¶¶'s 19, 21, 23 and 25 to the plaintiff and others, and collectively those misrepresentations are hereinafter referred to as the *"fraudulent representations."*

15

## COUNT I
## CONSPIRACY TO DEFRAUD

### 28.

The plaintiff adopts, realleges and incorporates herein by reference ¶¶'s 1 through 27 of the complaint as fully and completely as if set forth verbatim herein.

### 29.

This is an action against the defendants for fraud and civil conspiracy that resulted in damages to the plaintiff exceeding $3,300,000.

### 30.

At all times material hereto, the representations set forth in ¶¶'s 19, 21, 23 and 25 of the complaint, *fraudulent representations*, were false and the defendants made them knowing that they were false.

### 31.

At all times material hereto, the defendants intended that the plaintiff rely on the *fraudulent representations* and their purpose was first to deceive the plaintiff into believing that XA had $21 million on deposit at Wachovia, so that he would unwittingly use the goodwill that he had built with a number of banks and bankers over a period of many years of good bank relations, to help the defendants secure a loan for as much as $21 million, which loan would be secured by the *$21 million*

16

*deposit*, than unbeknownst to the plaintiff did not actually exist and then, secondly, to deceive the plaintiff into believing that the *$21 million deposit* (which actually did not exist) had been moved into a safe security, U.S. Treasury Bills, and put into an account that was pledged as collateral for the $3 million loan being guaranteed by the plaintiff and was completely restricted and being held at the sole discretion of PAB, until the $3 million loan with PAB was paid in full and, if not timely paid in full by XA, then PAB would have the unfettered right to use this account to satisfy this debt without the need for court or other action.   Given that the *$21 million deposit* and the Account Control Agreement were not worth the paper they were written on, the net effect of the plaintiff's personal guarantee was that he, not the *$21 million deposit*, was in reality standing first in line to repay the PAB note if XA defaulted, which by plan, it intended to do.   Therefore, when the defendants and PAB convinced the plaintiff to sign the personal guaranty for the $3,000,000 loan, he was, in effect, making the loan himself, if the guarantee was enforceable.   Lastly, the *fraudulent representations* worked together to convince the plaintiff to go even further by personally loaning an additional $300,000 to XA to accommodate it since the plaintiff was unable at that time to secure more than a $3 million loan for XA.   All of the *fraudulent representations* appeared true to the

17

plaintiff because of the context in which they were made and the fact that they were made by actual employees of Wachovia, verbally and in writing, with the writings being on authentic Wachovia stationary and letterhead (since they actually came out of a Wachovia office and from Wachovia telephone numbers and facsimile numbers from offices actually occupied by at least one actual Wachovia employee (Salinas) and they were made both to him and to an established bank (PAB) that had the right as a bank to gain information from Wachovia, not available to the plaintiff) and all of this occurred while the plaintiff was working with PAB and a corporate CEO of what appeared to be an up-and-coming profitable corporation which was backed by two licensed Florida lawyers (including Smith) who made multiple *fraudulent representations* about the *$21 million deposit* and about other matters related to Wachovia's conduct to help prevent the scheme from being discovered, as set forth in her letter, a true and accurate copy of which is attached hereto as Exhibit 4 (hereinafter the "*Smith Letter*").

### 32.

The plaintiff justifiably relied on these *fraudulent representations* for the reasons set forth above, and as will be shown at trial or on motion and as a direct

18

{00031365.DOCX}

and proximate result thereof, he suffered severe tangible and intangible economic damages in an amount to be proven at trial.

**33.**

The *fraudulent representations* made by the defendants to the plaintiff were material and completely false, and the transactions that they resulted in were the product of a complete sham wherein the defendants created an illusion that XA had $21 million in unencumbered cash or securities on deposit at Wachovia that it simply could not draw down on or against for a brief ninety-day or less period, when in fact, XA never had the $21 million on deposit at Wachovia or anywhere else.

**34.**

At all times material hereto, the defendants conspired together with one another with a mutual understanding to devise a deceitful scheme to defraud the plaintiff through a series of *fraudulent representations*, the goal of which was to induce him to secure funds for them through a loan by finding a willing lender without either him or the lending bank knowing that the *$21 million deposit* did not exist and then for the plaintiff to execute a personal guaranty to not only guarantee the loan, but to provide the basis for making the loan and since that loan was less

19

than what the defendants hoped to obtain by way of their scheme, to obtain personal financing from the plaintiff which turned out to be an additional $300,000.

**35.**

The defendants devised the within scheme with the specific intent of inducing the plaintiff to act contrary to his interest for their personal gains. As part of their scheme, the defendants planned, designed and fabricated false bank documents that fraudulently represented that XA had $21 million in near-liquid assets on account at Wachovia. Once the illusion of this account was created, the defendants used it in a number of ways to deceive the plaintiff and others into believing that the financial commitments they were making were safe, when if fact, at the instant the loan proceeds reached the defendants, it was instantly and illegally converted to their own use, as the defendants had no intention then or ever to repay this loan and, at all times, such actions were premeditated, deceitful and detrimental to the economic interests of the plaintiff.

**36.**

Before they made the *fraudulent representations* to the plaintiff, the defendants believed that the plaintiff would rely on them and after the defendants

20

made the *fraudulent representations* they knew that he was in fact relying on them and they knew that his reliance was justified because the *fraudulent representations* were well conceived and planned and more than likely to induce him to act by not only helping to secure this loan, but by signing the subject personal guaranty and by making a personal loan ($300,000) to XA and, they knew that if the plaintiff was not satisfied and convinced that the *$21 million deposit* was not only real (even though it was not), but had been converted to Treasury Bills (even though this was an impossibility) which were safely being kept at Wachovia and secured by an Account Control Agreement, that was guaranteed to pay in the event of any default, then the plaintiff would not have made the personal loan or signed the personal guaranty.

## 37.

During the course of carrying out their fraudulent scheme to defraud the plaintiff and others, but prior to the consummation of the loans made by PAB and the plaintiff and prior to the plaintiff executing the personal guaranty, certain employees, servants or agents of Wachovia, other than Salinas and Williams, while acting within the course and scope of their employment with Wachovia, in positions specifically established to discover and prevent fraud, learned of the

21

*fraudulent representations* and of the fraudulent scheme, and they learned that one or more loans were being underwritten and guaranteed and by reason of the fact that these Wachovia employees, servants or agents took no action to repudiate the *fraudulent representations* or to stop the defendants from committing said fraud during the course of their fraudulent enterprise, Wachovia, by and thru said employees, servants or agents thereby ratified the *fraudulent representations* and became a part of or joined the fraudulent conspiracy.

### 38.

At all times material hereto, XA, through employees, servants or agents other than Prozer, became and were aware that Prozer was making the *fraudulent representations* concerning the existence of the *$21 million deposit* and they became aware of the within described conspiracy to defraud the plaintiff prior to completion of the fraud but they took no action to repudiate the *fraudulent representations* or stop the defendants from continuing to make and perpetuate false representations and they thereby ratified the *fraudulent representations* and became a part of or joined the fraudulent conspiracy.

{00031365.DOCX}

**39.**

At all times material hereto, the defendants acted deliberately, with premeditation and by design to defraud the plaintiff and to inflict substantial economic injury on him, and such actions were carried out in conscious disregard of the plaintiff's property and other rights.

**40.**

Accordingly, the plaintiff is entitled to compensatory and punitive damages, as well as his attorneys' fees and other litigation costs, jointly and severally against the defendants in an amount to be determined in the enlightened conscience of the jury and as provided for in the state and federal statutes and other law plead above.

## COUNT II
## FRAUD BASED ON *RESPONDEAT SUPERIOR*

**41.**

The plaintiff adopts, realleges and incorporates herein by reference paragraphs 1 through 40 of his complaint as fully and completely as if set forth verbatim herein.

**42.**

In addition to the remedies and relief alleged hereinabove, the plaintiff claims a right to damages, including compensatory damages (which exceed

23

{00031365.DOCX}

$3,300,000) against defendants, Wachovia and XA, based on a cause of action for fraud based upon *respondeat superior*.

### 43.

At all times material hereto, Salinas and Williams made the *fraudulent representations* specified above while acting within the course and scope of their employment with Wachovia and in the business of Wachovia, with the actual or, alternatively, apparent authority of Wachovia.

### 44.

At all times material hereto, Prozer made the *fraudulent representations* specified above while acting within the course and scope of his employment with XA and in the business of XA, with the actual or, alternatively, apparent authority of XA.

### 45.

Accordingly, the plaintiff is entitled to compensatory and punitive damages against defendants Wachovia and XA, jointly and severally, as well as his costs of litigation, including reasonable and attorneys' fees and any all other remedies available at law.

{00031365.DOCX}

## COUNT III
## R.I.C.O. (Pursuant to O.C.G.A. § 16-14-3)

### 46.

The plaintiff adopts, realleges and incorporates herein by reference paragraphs 1 through 45 of his complaint as fully and completely as if set forth verbatim herein.

### 47.

In addition to what has previously been alleged herein, the plaintiff brings this action against the defendants to recover damages, treble damages and litigation costs, including reasonable attorneys' fees, pursuant to O.C.G.A. § 16-14-3, commonly referred to as the "Georgia R.I.C.O. Act."

### 48.

The defendants together and as co-conspirators engaged in a pattern of racketeering activity involving at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices and victims. Specifically, the defendants, by mutual agreement, by and through their respective employees, agents or officers, defrauded the plaintiff, and in the course of the fraud violated O.C.G.A.

{00031365.DOCX}

§ 16-14-3(9)(A)(ix),   O.C.G.A.   § 16-14-3(9)(A)(xxxix)   and   O.C.G.A.§ 16-14-3(9)(B), in the following respects:

(a)   The defendants engaged in "racketeering activity" as defined by 18 U.S.C. § 1961 by committing violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 ( wire fraud) on more than two occasions; and

(b)   The defendants engaged in "racketeering activity" as defined by O.C.G.A. § 16-8-3 (theft by deception) on more than two occasions.

**49.**

The defendants, through deceitful means and artful practice, including through the *fraudulent representations* specifically plead above, intentionally deprived the plaintiff of monies belonging to him, as defined by O.C.G.A. § 16-8-3, and the defendants are therefore liable to the plaintiff by reason of theft by deception.

**50.**

At all times material hereto, the deceitful means and artful practices used by the defendants were intentional and criminal as defined by O.C.G.A. § 16-8-3 as the defendants:

{00031365.DOCX}

(i)     created or confirmed the plaintiff's impression of an existing fact or past event, by specifically and fraudulently representing to him on and after July 22, 2008 the existence of the *$21 million deposit* at Wachovia, representing on or about August 18, 2008 that most of the money that was purportedly part of the *$21 million deposit* had been used to purchase U.S. Treasury Bills, that were then and there being held on account at Wachovia, and representing on September 4, 2008 that the *$21 million deposit* was secured by an Account Control Agreement when, in fact, all such representations, previously identified herein as the *fraudulent representations*, were false when made and the defendants at that time knew them to be false;

(ii)     failed to correct the false impression that the *$21 million deposit* at Wachovia existed, that the money was held in U.S. Treasury Bills, and that the *$21 million deposit* was secured by an "Account Control Agreement," which false impressions the defendants previously contrived, created, perpetuated and confirmed; and

(iii)     promised performance of services under the "Account Control Agreement" which they never intended to perform.

27

## 51.

To aid in the furtherance of and to carry out, perfect and execute their fraudulent scheme, the defendants used interstate commerce to communicate their *fraudulent representations*. Specifically, they transmitted the *fraudulent representations*, the written version of which are contained in Exhibits 1, 2, 3 and 4, via cellular phone, telephone, facsimile, the internet and through the U.S. Mail. All of these transmissions were made from a point within one state to a point within another state. The *fraudulent representations* were transmitted both verbally, electronically, by cable, wire and by other imaging processes on multiple occasions by the defendants, individually and in concert with one another. Such actions separately and together constitute mail or wire fraud as defined by 18 U.S.C. § 1341 and 18 U.S.C. § 1343, and each instance was a separate instance of criminal conduct defined as a "racketeering activity" under 18 U.S.C. § 1961(1).

## 52.

As described above, the defendants conspired to and in fact perpetrated a fraud upon the plaintiff, not only via their spoken word, but by using cellular phones, telephones, facsimiles, the internet and the U.S. Mail, which misrepresentations fraudulently induced the plaintiff to unwittingly assist the

28

defendants in their pursuit of fraudulently obtaining money through a fraudulent loan and, to entice and induce the plaintiff to sign a personal guaranty to unwittingly help secure that fraudulent loan and, to induce the plaintiff to personally loan XA $300,000 to be distributed to and amongst the defendants.

During the course of this conspiracy but before the fraudulent conspiracy was completed, Wachovia employees, other than Salinas and Williams, became fully aware that Salinas and Williams had engaged and were engaging in conduct that violated state and federal criminal law and were participants in a fraudulent scheme designed to defraud third parties out of money and despite such knowledge, these other Wachovia employees took no action to repudiate, correct, investigate or stop the fraud and, this failure to act was not only a ratification of the fraudulent conspiracy, it was in conscious disregard of the rights of the plaintiff, particularly considering the fact that these employees occupied positions within Wachovia that were established for the specific purpose of identifying and stopping fraudulent activity, all of which resulted in serious economic injury to the plaintiff.

{00031365.DOCX}

**53.**

As a direct and proximate result of the *fraudulent representations* specified herein, and the numerous incidents of racketeering activity plead with particularity and specificity herein, the plaintiff has been damaged in that he personally guaranteed the PAB loan, which PAB is actively enforcing against him due to XA's default and, he was scammed out of $300,000, which he paid at or shortly after closing of the PAB loan, to XA, in the form of a personal loan to XA, he has incurred attorneys' fees in the defense of the action brought against him by PAB and in the prosecution of the present action and he has suffered severe intangible losses to his credit and reputation that have impaired, if not destroyed, his ability to work and earn a living in the manner that he had come to enjoy.

**54.**

Accordingly, the plaintiff is entitled to recover these special and other compensatory damages from the defendants pursuant to O.C.G.A. § 16-14-3, et. seq., and to punitive damages pursuant to O.C.G.A. § 51-12-5.1 as more specifically set forth below.

30

{00031365.DOCX}

## COUNT IV
## R.I.C.O. (Pursuant to 18 U.S.C. § 1964 (c))

### 55.

The plaintiff adopts, realleges and incorporates herein by reference paragraphs 1 through 54 of the complaint as fully and completely as if set forth verbatim herein.

### 56.

This is an action against the defendants to recover damages pursuant to 18 U.S.C. § 1961, 18 U.S.C. § 1962 and 18 U.S.C. § 1964(c), hereinafter collectively referred to as the R.I.C.O. Act.

### 57.

The defendants are all persons defined and targeted by the R.I.C.O. Act and each, individually, and through the prohibited conduct of their servants, agents and officers, together and as co-conspirators, formed an "enterprise" pursuant to the R.I.C.O. Act, through which they devised and planned a scheme to defraud the plaintiff and PAB, a financial institution.

### 58.

Through their fraudulent scheme, the defendants derived and continue to derive income from a pattern of racketeering and the income derived from their

31

fraudulent scheme has been distributed amongst them and used for their personal ill-gotten gain and to perpetuate their fraudulent enterprise, including the business operations of XA.

**59.**

As set forth with specificity and particularity above, the defendants employed a variety of *fraudulent representations* and other fraudulent means derived to finagle a $3,000,000 loan from PAB, which they either never intended to repay or if they intended to repay, such repayment was to be made using the ill-gotten fruits of a subsequent fraudulent acquisition and, in either event, the defendants were able to obtain the proceeds of the fraudulent loan from PAB, in large part because of the personal guaranty that they fraudulently induced the plaintiff into signing, which he did sign, because he justifiably believed that the *fraudulent representations* were true.

**60.**

After XA defaulted on the $3 million loan that PAB made to XA, which was by design of the defendants, PAB sued the plaintiff on the personal guaranty and in that action it claims that the plaintiff is indebted to PAB for the full amount of the

32

$3 million loan as well as other damages, including attorneys' fees and litigation expenses.

## 61.

That action, pending in the Superior Court of Bartow County, Georgia, not only directly threatens the economic well being of the plaintiff, it has clouded his credit, which prior to the defendants' fraudulent enterprise, was excellent.   This cloud over his credit and reputation in the business community within which he earned a living has dramatically impaired his ability to work and earn a living, as his business endeavors were dependant on his good credit and reputation.

## 62.

As set forth with particularity and in detail above, the defendants used these same *fraudulent representations* and other fraudulent means to induce the plaintiff to loan XA an additional $300,000, as a purported personal loan, that the plaintiff made based on his justifiable belief that in a mere ninety (90) days or less, Wachovia would lift its hold on the *$21 million deposit*, which would free these funds, which funds would then be used to repay both the PAB loan ($3,000,000) and the plaintiff's loan ($300,000) before XA would have any further right to use such funds, which grossly exceeded the loans made by PAB and the plaintiff

33

($21 million versus $3.3 million).   The plaintiff had no way of knowing that the representations made to him and others by the defendants were fraudulent and that the defendants had tricked him into believing that the *$21 million deposit* was a complete farce and that they never intended to repay either PAB or him and, that through this scheme, PAB would claim that the plaintiff was obligated to repay this fraudulent loan for the benefit of XA, despite the fact that the plaintiff's guaranty was fraudulently obtained through PAB, who concealed information about the *$21 million deposit* from the plaintiff.

## 63.

All of the conduct described above violated 18 U.S.C. § 1962(a).

## 64.

At all times material hereto, Wachovia and PAB were interstate banking institutions providing banking services throughout the United States and both were engaged and acting in interstate commerce.

## 65.

At all times material to the allegations of this complaint, Salinas and Williams, as employees of Wachovia, conducted the business affairs of Wachovia

and did so through a pattern of racketeering activity as defined by the R.I.C.O. Act, and such conduct violated 18 U.S.C. § 1962(c), specifically as follows:

(i)     Salinas disseminated the written *fraudulent representations* on at least three (3) separate occasions to the plaintiff and others by facsimile transmission and through the mail;

(ii)    Salinas made and/or participated in at least one telephone call to the plaintiff and others in which he verbally repeated and confirmed the *fraudulent representations*;

(iii)   Salinas made and/or participated in at least one cellular phone call to the plaintiff and others in which he verbally repeated and confirmed the *fraudulent representations*;

(iv)    Williams also confirmed the *fraudulent representations* in one or more writings he signed and discussed with the plaintiff or others and disseminated via facsimile to the plaintiff and others; and

(v)     Smith confirmed the *fraudulent representations* in the *Smith Letter* which was intended for the plaintiff and others to convince them that the *fraudulent representations* were true, rather than false.

{00031365.DOCX}

**66.**

The defendants individually and together as a group are a *"person"* as defined by 18 U.S.C. §§ 1961(3).

**67.**

The defendants individually and together as a group are an *"enterprise"* as defined by 18 U.S.C. §§ 1961(4).

**68.**

The defendants individually and together as a group engaged in and conspired to engage in the unlawful *"racketeering activity"* defined at 18 U.S.C. § 1961(1).   Specifically, the defendants made and disseminated the *fraudulent representations* set forth above in violation of:

(i)     18 U.S.C. § 1341 (mail fraud);

(ii)    18 U.S.C. § 1343 (wire fraud); and

(iii)   18 U.S.C. § 1344 (bank fraud).

**69.**

The defendants individually and together as a group committed two or more acts of *racketeering activity* described herein, thereby forming a *"pattern of racketeering activity"* as defined by 18 U.S.C. § 1961(5) and such conduct as

36

{00031365.DOCX}

plead with specificity and particularity elsewhere herein and above occurred after the effective date of the RICO Act and within the last ten (10) years.

## 70.

The defendants individually and together as a group received income derived from a *pattern of racketeering activity* which they used in the acquisition of and interest in and in the establishment of the subject fraudulent enterprise which conduct affected or occurred in interstate commerce and was unlawful as set forth at 18 U.S.C. § 1962(a).

## 71.

The defendants individually and together as a group participated directly and indirectly in conducting the affairs of the within identified fraudulent enterprise and they acquired and maintained an interest in the fraudulent enterprise through the *pattern of racketeering activity* identified herein and that conduct was unlawful pursuant to 18 U.S.C. §§ 1962(b) and (c).

## 72.

The defendants, as *persons* defined by 18 U.S.C. § 1961(3), conspired to violate 18 U.S.C. §§ 1962(a), (b) and (c) and that conspiracy was unlawful as set forth at 18 U.S.C. § 1962(d).

{00031365.DOCX}

**73.**

The plaintiff was injured in his person and property by reason of the violations by the defendants of 18 U.S.C. § 1962 and Chapter 96 of Title 18 of the U.S.C. and, therefore, he is entitled to recover threefold the damages he has or will sustain and the cost of this action, including reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## COUNT V – PUNITIVE DAMAGES

**74.**

The plaintiff adopts, re-alleges and incorporates herein by reference paragraphs 1 through 73 of his complaint as fully and completely as if set forth herein.

**75.**

The defendants' conduct, as described fully elsewhere herein, was willful, malicious, wanton, oppressive and committed with an entire want of care such as to raise a presumption that it was with conscious indifference as to the consequences it caused the plaintiff.  As a direct result thereof, the plaintiff is entitled to punitive damages pursuant to O.C.G.A. § 51-12-5.1 in an amount to be determined in the enlightened conscience of the jury.

{00031365.DOCX}

**WHEREFORE,** the plaintiff demands judgment against the defendants named herein, jointly and severally, and prays for the following relief:

(a)   that summonses be issued and the defendants named herein be served according to law;

(b)   that plaintiff have a trial by a jury of twelve (12) on all genuine issues of material fact;

(c)   that plaintiff have a judgment against the defendants for all general and special damages;

(d)   that plaintiff have a judgment against the defendants for treble damages in an amount to be proven at trial;

(e)   that plaintiff have a judgment against the defendants for punitive damages in an amount to be proven at a bifurcated trial and as determined in the enlightened conscience of a fair and impartial jury; and

{00031365.DOCX}

(f)     that plaintiff be granted such other and further relief as the Court

deems just and proper by the Court.

This 5th day of November, 2010.

Respectfully submitted,

**AKIN & TATE, P.C.**


/s/ S. Lester Tate
S. Lester Tate
Georgia State Bar No. 698835
*Attorneys for Plaintiff*

11 West Public Square
P.O. Box 878
Cartersville, GA  30120-0878
Telephone:  (770) 382-0780
Facsimile:   (770) 386-1452



**GRAY CHAMBERLIN LLC**


/s/ William E. (Bo) Gray II
William E. (Bo) Gray II
Georgia State Bar No. 306460
Dwight Chamberlin
Georgia State Bar No. 107701
*Attorneys for Plaintiff*

{00031365.DOCX}